## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HANNAH BUCKLEY, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>   v.<br><br>HOFSTRA UNIVERSITY,<br><br>                   Defendant. | No. 2:20-cv-02424<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ..................................................................................................1

II.     JURISDICTION AND VENUE ..................................................................................2

III.    PARTIES ......................................................................................................................3

IV.    FACTS ..........................................................................................................................4

        A.      Background ....................................................................................................4

        B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................8

        C.      Defendant's Refusal To Issue Tuition, Fee, and Room and Board Refunds .........14

V.     CLASS ACTION ALLEGATIONS .........................................................................15

VI.    CAUSES OF ACTION ..............................................................................................18

       COUNT I BREACH OF CONTRACT....................................................................18

       COUNT II UNJUST ENRICHMENT .....................................................................19

       COUNT III CONVERSION ....................................................................................20

PRAYER FOR RELIEF .......................................................................................................21

JURY DEMAND ...................................................................................................................21

Plaintiff, HANNAH BUCKLEY, individually and on behalf of all others similarly situated, for her Class Action Complaint against Defendant HOFSTRA UNIVERSITY ("HOFSTRA"), based upon personal knowledge as to her own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues to charge for tuition, fees, and/or room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

010920-26/1271873 V1

3.     While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.     As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full-value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that less than two-thirds of all of the members of the proposed Class in the aggregate are citizens of New York, where this action is originally being filed, and

that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6. Venue is appropriate in this District because Defendant is located within the Eastern District of New York. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III. PARTIES

7. Plaintiff Hannah Buckley is a citizen and resident of the State of New York. Plaintiff Buckley is enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term.

8. Plaintiff paid Defendant for opportunities and services that she will not receive, including on-campus education, facilities, services, and activities.

9. While Plaintiff could have obtained her degree online, Plaintiff specifically selected an in-person, in-class experience at Hofstra for the variety of educational experiences that only an in-person program can deliver.

10. With Defendant's campus closure and transition to an online-only educational experience, Plaintiff suffered a decreased quality of experience and education, with limited or no real-time instruction.

11. For example, one of Plaintiff's professors completely cancelled classes for the remainder of the semester and assigned an optional final exam. Another professor utilized old PowerPoints that did not cover the material required for the final exam.

010920-26/1271873 V1

12.     Additionally, online only classes were ineffective for classes focused on student presentations, class discussion, or lab work. The usual robust discussion sessions were limited to small student groups on Zoom that were not facilitated by a professor or teaching assistant. Student projects and lab work was cancelled.

13.     Some professors were inaccessible to students while others offered occasional virtual office hours but then cancelled numerous sessions.

14.     Plaintiff lost the use of important facilities for her studies, including classrooms, study spaces, university libraries, and lounges that were bargained for by selecting in-person instruction.

15.     Plaintiff further lost the opportunity to enjoy Hofstra's beautiful Tree Campus USA grounds and arboretum and the celebrated spring tulips.[2]

16.     Plaintiff was unable to participate in her philosophy club activities or attend lectures and events including the Spring Music festival as part of her on campus experience.

17.     Defendant Hofstra University is an independent institution of higher learning located in Hempstead, New York. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

18.     Founded in 1935, Hofstra has a current enrollment of approximately 10,804 students, with approximately 165 undergraduate degree program options and 175 graduate degree program options.

---

[2] https://www.hofstra.edu/about/campus/facops/facops-grounds-arboretum.html.

19.     For its fiscal year ending in 2019, Defendant's endowment exceeded $633.7 million, with Defendant reporting $1.235 billion in total assets. Additionally, Defendant's net tuition and fee revenue exceeded $289.4 million.

20.     In 2019, Hofstra concluded a successful capital campaign, raising $232 million and reported "yet another strong fundraising year in 2018–2019," with "more than $35 million . . . secured in new cash gifts and pledge payments, as well as $7 million in new pledges and commitments."[3]

21.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

22.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

23.     A few examples of such efforts to promote that experience follow.

24.     Hofstra describes itself as a place that helps students "get where you want to go, with small classes, dedicated faculty and a beautiful, energized campus, plus all the opportunities of New York City within easy reach . . . At Hofstra, you'll have all the resources you need— excellent library resources with extensive online and print collections, state-of-the-art classrooms, learning and laboratory facilities, and extensive wired and wireless Internet access, including the only Internet2 connection among private colleges on Long Island."[4]

---

[3] https://www.hofstra.edu/about/administration/president/pres_stateoftheuniversity.html.

[4] https://www.hofstra.edu/about/index.html.

25.     In addition, Hofstra ordinarily promotes "[a] diverse mix of cultural, social, athletic and recreational activities delivers the full college experience. Hofstra offers students the opportunity to live and learn on our beautiful, 240-acre campus on Long Island and have easy access to the academic, cultural and career opportunities in the New York City metropolitan area."[5]

26.     Hofstra also considers its "residential living program [as] an integral part of the total student experience at Hofstra," with "spacious common lounges, state of the art furnishings, kitchen facilities and study lounges mak[ing] our residential environment the place to be for Hofstra students."[6]

27.     Due to a student-to-faculty ratio of 14 to 1, Hofstra explains that students "will get to know your professors, and they'll get to know you. Our classes are small to encourage discussion, foster collaboration and inspire students to explore and expand their horizons. And our professors are mentors who care deeply about your education, and are committed to helping you find your path in life."[7]

28.     And Hofstra recognizes that "Experience is Another Teacher," promoting its "[e]xperiential learning and state-of-the-art facilities Clubs and internships. Career opportunities. The Hofstra experience will help you learn, grow and succeed."[8]

29.     Further, to allow students and faculty to personally interact, Hofstra utilizes a unique experience, the "Common Hour," a window that "occurs between 11:15 a.m. and 12:40

---

[5] *Id.*

[6] https://www.hofstra.edu/studentaffairs/studentservices/reslife/index.html.

[7] https://www.hofstra.edu/home/news/ur/pride-purpose/attention.html.

[8] https://www.hofstra.edu/home/news/ur/pride-purpose/index.html.

p.m. every Wednesday," during which "[n]o classes are scheduled during this time in order to allow students and faculty the opportunity to participate in co-curricular activities."[9]

30.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

31.     For the Spring 2020 term, Defendant assesses the following: $23,225.00 for tuition, between $5,480 and $8,858 for room, between $525 and $2,734 per term for dining, up to $105.00 per term as a technology fee, a $345.00 University fee, a $120.00 residence life fee, along with a $80.00 student activity fee. Similarly, Defendant charges graduate tuition on a per-credit hour basis, ranging from $1,398 to $1,430 per credit hour depending on the level and course of study.

32.     Such charges for study are significantly higher than online-only programs, including the limited online degrees that Defendant offers.

33.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges a flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

34.     As to Defendant, for the Spring 2020 term, Defendant also charged students less per credit hour for online courses. For example, Defendant charges Online L.L.M. degree students $1,298 per credit hour where it ordinarily charges part-time students at the rate of $2,140 per credit hour. As another example, Defendant charges students enrolled in its in-person Executive M.B.A. program the full program cost of $95,680, but charges students in its Online

---

[9] https://www.hofstra.edu/pdf/parfam/parfam_parenthandbook.pdf.

M.B.A. at $1,430 per credit hour for the 45-credit hours necessary to obtain that degree at a program cost of in excess of $64,350.

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

35.      On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

36.      By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

37.      Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

38.      By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

39.      Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

40.      Defendant's response to the pandemic began on or about March 4, 2020, when Defendant cancelled all upcoming, non-essential University-related travel.[10]

---

[10] https://news.hofstra.edu/2020/03/04/university-coronavirus-update-2-2-2-2/.

41.     On March 8, 2020, Defendant announced that it had cancelled all in-person classes for the week of March 9, 2020, with class work to be made up and a new schedule to be announced. Defendant also directed all non-residential students to remain at home.[11]

42.     On March 10, 2020, Defendant cancelled all student organization related activities, including but not limited to events, meetings and travel, through March 22, 2020.[12]

43.     On March 12, 2020, Defendant informed students that it would transition all in person classes to online classes "beginning at the conclusion of Spring Break on March 23 and until further notice."[13]

44.     By March 15, 2020, Hofstra recommended that all non-essential personnel work from home and not report to campus.[14]

45.     And on March 17, 2020, Defendant ordered residential students to vacate residence halls by March 25, 2020.[15]

46.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

47.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

---

[11] https://news.hofstra.edu/2020/03/08/university-coronavirus-update-2-2-2/.

[12] https://news.hofstra.edu/2020/03/10/university-coronavirus-update-2/.

[13] https://news.hofstra.edu/2020/03/12/university-coronavirus-update-3/.

[14] https://news.hofstra.edu/2020/03/15/university-coronavirus-update-4/.

[15] https://news.hofstra.edu/2020/03/17/university-coronavirus-update-5-2/.

48.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[16]

49.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no

---

[16] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[17]

50.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[18]

51.     Hofstra students echo such sentiments. For example, as noted in a Change.org petition signed by over 1,700 students:

> As Hofstra Students, our college experience is made up of going to in-person classes, clubs, the library, sponsored events, labs, the gym, and for some of us, living on campus. Due to the coronavirus, Hofstra had to take precaution and switch to online courses. This decision will cause little social interaction, many people taking classes from the comfort of their homes, and people not living in rooms they already paid for. The semester was not even halfway done when school got fully cancelled this week. We only got our college experience for 6 weeks and there were 11 weeks left of the semester.
>
> Therefore, Hofstra should give us more than half of our money back, about 65% which is the exact percentage of the semester that was left, for any student activity fees from our tuition, meal plans, and all of the room and board expenses for people that decided to reside on campus this semester.
>
> Hofstra University should give the students options to get their money back or to come back in September for no additional charge. Why should we be expected to pay for resources we are unable to get or use for over half of the semester?
>
> Especially as seniors set to graduate, we are losing out on the last times we will have in our classes, sports, clubs, and potentially even our graduation ceremony. We are losing out on education

---

[17] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[18] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

quality due to no hands-on learning as well as the lack of networking opportunities for graduating seniors. Careers will be significantly impacted in a negative way without these Hofstra sponsored networking events and with less chance of finding a job. Still taking the money for the time we did not get is only adding insult to injury, especially when it is difficult for people to afford tuition as it is. If we are unable to come back to school for the whole semester or at least a significant portion of it, then the school should acknowledge the circumstance and return the money to all students for the time they lost in these areas. Tuition is expensive as it is, and not only is it unfair for our money to be kept by the school, but it is also unethical.

Disclaimer: This only applies if we do NOT get to go back to school by April which it is looking like right now that we won't. And Seniors do NOT get to have a graduation ceremony at all.[19]

52.     As reported in The Hofstra Chronicle student newspaper, students have described

a host of difficulties arising from Defendant's shift to a new, unplanned method of instruction:

In addition to . . . technical difficulties, some students said they also feel more distracted at home and that these distractions take away from their learning environment.

"Motivation and focus are gone," said Joseph Adelmann, a senior radio production and studies major at Hofstra. "Those of us in hands-on production-type courses have suffered because there is no substitute for in-studio time."

"It is definitely harder to stay motivated during online classes," said David Blicksilver, a sophomore journalism major at Hofstra. "I find myself with so many distractions around the house that even if classes are meeting on schedule, it is very easy to turn off the camera or microphone and look at my phone."

"It is even worse if classes are not meeting on schedule and the work is assigned on a week-by-week basis," Blicksilver added. "There is no constant reminder to get work done."

However, some students emphasized that faculty and staff are trying their best to provide students with the best education they can under these trying circumstances.

---

[19] https://www.change.org/p/hofstra-university-money-back-for-dorming-and-activity-fees-due-to-online-class-for-hofstra-students.

"Faculty are hating this just as much as we are and are grasping at
straws to try and salvage what education they can give," Adelmann
said.

"For the most part, [professors] have been very understanding
during these times," Blicksilver said. "This is just as frustrating
and new to them as it is to us."[20]

53.     And as the Chronicle described another student's negative reaction to Hofstra's

shift to online education:

Although the importance of social distancing and the health of the
Hofstra community cannot be denied, the administration's
hastiness in implementing these measures has been the subject of
criticism since the order to move out was emailed to students on
March 17, effectively shifting all classes online.

***

"Any way you look at it, this is not an optimal learning
environment. Granted, this is not an optimal situation, and I
understand that professors and administrators are handling a lot as
information about the virus progresses and changes each day, but
their job is to help us students. It should have been considered that
a significant portion of the student body is not on the same time
schedule. I can't even imagine how difficult it must be for some
international students," Briggs continued.

Hofstra's student body is comprised of students from nearly 70
countries, many of whom are in Asia and lack an internet
connection sufficient enough to handle video conferencing. Even
within the United States, Hawaiian students are six hours behind
Eastern Standard Time.

"A lot of things could have been handled better. We should have
been notified about classes switching to online sooner so that
people, especially out-of-state and international students, could
[have] planned accordingly. Professors should have had to reach
out to us sooner than the weekend before classes started. Residence
Life should have coordinated moving out plans as soon as it was
decided that classes would be online for the rest of the semester,"

---

[20] https://www.thehofstrachronicle.com/category/news/2020/5/13/long-island-students-react-to-online-classes.

Briggs said. "With Hofstra's high price tag, we deserve better treatment."[21]

## C.    Defendant's Refusal To Issue Tuition, Fee, And Room And Board Refunds

54.    Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

55.    And while Defendant has not forced students to leave student housing, Defendant has explicitly encouraged students to consider moving out of student housing to a family residence or living environment that minimizes contact with others. Many students have followed the Defendant's instructions and moved off campus. When students follow the Defendant's instructions, they are no longer receiving room and board services. Likewise, when student services are curtailed or eliminated, students should not be forced to pay for services they cannot use.

56.    Defendant has agreed to prorate some fees and costs, but not equal to the number of days the student has paid room and board for the remaining Spring term.

57.    For the housing fees subject to a refund, Hofstra calculated the refunds based on a required move-out date of March 25, 2020, even though students were asked to (and did) leave Hofstra prior to that date.

58.    Defendant has also refused to give a prorated refund for fees paid for student services students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

59.    While Hofstra agreed to refund student accounts with a calculated amount of unused housing and dining, it refused to provide students with any reimbursement or refunds for

---

[21] https://www.thehofstrachronicle.com/category/hofstra/2020/3/29/navigating-time-zones-for-online-classes.

instructional costs, such as tuition or technology fees, and other fees such as the university fee

and student activity fee.

## V.    CLASS ACTION ALLEGATIONS

60.    Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of herself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who
> paid Defendant, in whole or in part, tuition, fees, and/or room and
> board for in-person instruction and use of campus facilities, but
> were denied use of and/or access to in-person instruction and/or
> campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further

excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or

amend the Class definition including through the creation of sub-classes if necessary, as

appropriate, during this litigation.

61.    The definition of the Class is unambiguous. Plaintiff is a member of the Class

Plaintiff seeks to represent. Class Members can be notified of the class action through contact

information and/or address lists maintained in the usual course of business by Defendant.

62.    Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed

that their individual joinder of all Class Members is impracticable. The precise number of Class

members is unknown to Plaintiff but may be ascertained from Defendant's records. However,

given the thousands of students enrolled at Defendant in a given year, that number greatly

exceeds the number to make joinder possible. Class Members may be notified of the pendency of

this action by recognized, Court-approved notice dissemination methods, which may include

U.S. Mail, electronic mail, Internet postings, and/or published notice.

63.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

64.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

65.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.      Whether Defendant engaged in the conduct alleged;

b.      Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.      Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.      Whether Defendant violated the common law of unjust enrichment;

e.      Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.      The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

66.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

67.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

68.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

69.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

70.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to

-17-

the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

71.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

72.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.     CAUSES OF ACTION
## COUNT I
## BREACH OF CONTRACT

73.     Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

74.     Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

75.     Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

76.     Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

77.     However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class

Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

78.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

79.     Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

80.     Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

81.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

82.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

83.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

84.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's

unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

85.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

86.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

## CONVERSION

87.     Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

88.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

89.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

-20-

90.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

91.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

92.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.     Actual damages and all such other relief as provided under the law;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on her own behalf and on behalf of Class Members.

Dated: June 1, 2020

Respectfully submitted,

By: /s/ *Nathaniel A. Tarnor*
Nathaniel A. Tarnor (Bar No. 4742797)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
(212) 752-5455
nathant@hbsslaw.com

Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated*